**WEYERHAEUSER TIMBER COMPANY,**
a corporation, Plaintiff,

v.

**BOSTITCH, INC., a corporation,**
Defendant.

**Civ. A. No. 2521.**

United States District Court
D. Rhode Island.

Nov. 13, 1959.

Merriam, Smith & Marshall, Charles J. Merriam, Samuel B. Smith, Chicago, Ill., Alan B. Cusick, Providence, R. I., for plaintiff.

Tillinghast, Collins & Tanner, Benjamin A. Smith, Providence, R. I., Naylor & Neal, James M. Naylor, San Francisco, Cal., for defendant.

DAY, District Judge.

This is an action for infringement of United States Reissue Letters Patent No. 24,668, entitled "Apparatus for Cutting a Flattened Container", issued on July 21, 1959 to James B. Rodman, said patent being a reissue of United States Letters Patent No. 2,807,197 of the same title, granted to the said Rodman on September 24, 1957. Both said patent and said reissue patent have been assigned to the plaintiff (hereinafter called "Weyerhaeuser"). Weyerhaeuser now seeks an injunction against further infringement of said reissue patent, general damages, the costs of this action, and an award of counsel fees.

The matter is now before me on the defendant's motion for the stay of this action pending the final determination of an action now pending in the United States District Court for the Northern District of California entitled "H. & C. Engineering Corporation, a corporation, and H. & C. Container Machinery Corporation, a corporation, Plaintiffs v. Weyerhaeuser Timber Company, a corporation, Defendant", and docketed in the files of said court as "No. 37786, Civil". Appended to the defendant's motion are certain affidavits, a copy of a certain deposition, a partial transcript of the proceedings to date in said action in California, copies of the pleadings filed therein, docket entries therein, and a certificate by the clerk of said court. In opposition to the defendant's motion Weyerhaeuser has filed counter-affidavits, excerpts from depositions heretofore taken in the California action, and certain other exhibits.

At the hearing on defendant's motion no additional evidence was presented, the parties relying upon the material they had filed in support of and in opposition to the motion. From the material so submitted certain facts may be deemed to be established. The action now pending in California was instituted on October 31, 1958—approximately nine months prior to the commencement of the instant action. In that action, the plaintiffs seek

a declaratory judgment that said patent is invalid and that the plaintiffs are not infringing it.

On December 12, 1958, Weyerhaeuser filed its answer and counter-claim to the plaintiffs' complaint. In said answer and counter-claim, Weyerhaeuser admits that it is the owner of said patent, that there is an actual controversy between it and said H. & C. Engineering Corporation, and that it has charged the latter in writing with infringement of said patent. It further alleges therein that one William J. Hottendorf, one of the officers of H. & C. Engineering Corporation, was formerly employed by Weyerhaeuser's predecessor, Kieckhefer Container Corp. (hereinafter called "Kieckhefer"); that he caused said H. & C. Engineering Corporation to be formed promptly upon or somewhat before quitting his employment with Kieckhefer, and then used confidential and secret information acquired during his said employment to build the machines described in the plaintiff's complaint, all in violation of his confidential relation. In its said counter-claim, Weyerhaeuser prays that said patent and each claim thereof be declared valid and infringed by the counter-defendants, for an accounting, damages and other relief.

On September 8, 1959, the plaintiffs were granted leave to file a supplemental complaint pursuant to Rule 15(b) F.R. Civ.P., 28 U.S.C.A. and such supplemental complaint was filed on the same date. Said supplemental complaint alleges that said reissue patent was issued on July 21, 1959; that Weyerhaeuser now claims ownership thereof; that Weyerhaeuser has charged the plaintiffs with infringement thereof by reason of their manufacture and sale of their flap cutting machines; that Weyerhaeuser has instituted the present action against Bostitch, Inc. (hereinafter called "Bostitch"); and that the plaintiffs are apprehensive that Weyerhaeuser will harass and annoy others of their customers. In this supplemental complaint they seek a declaratory judgment that said reissue patent is invalid; that it is not infringed by them; and certain other relief described therein. No answer to the supplemental complaint has been filed as yet.

The documents submitted also show beyond doubt that the plaintiffs, or one of them, manufactured the allegedly infringing machines now in the possession of Bostitch, the defendant in this action.

It is also clear that pre-trial proceedings have progressed considerably in the California action, and the certificate of the clerk of the United States District Court for the Northern District of California shows that a prompt trial of said action may be had if the parties desire.

The background of this litigation appears to be as follows. Hottendorf, an employee of Kieckhefer, left his employer to form H. & C. Engineering Corporation (hereinafter called "Engineering"). Engineering promptly began to manufacture certain machines similar to those made by Kieckhefer, including the "flap cutters" which allegedly infringe Weyerhaeuser's patents. Twenty of these flap cutters were sold by Engineering to Bostitch, the last sale taking place in March, 1959. Sometime in 1958, H. & C. Container Machinery Corporation, (hereinafter called "Machinery") was formed. The two corporations (Engineering and Machinery) have interlocking directorates and common officers; and Hottendorf and one Edward Conn apparently control the voting stock of both. On January 26, 1959, Machinery entered into a license agreement with Bostitch granting to the latter the exclusive right to manufacture, sell and use its flap cutters and providing that any improvements in said machines would be forwarded to the latter upon payment of the cost expended in the engineering and design of such improvement. Said agreement also provided that Machinery would supply Bostitch on request with all drawings, patterns, and the like then in its possession which were designed for use in the manufacture of said machines. Finally, the agreement provided that Machinery would indemnify and save harmless Bostitch, its agents, distributors and dealers from and against any loss, liability, damage and expense on account of any in-

760

fringement or claim of infringement of letters patent by reason of its or their manufacture, sale or use of said machines. This agreement required Bostitch to pay Machinery certain royalties on the sale of said machines during the period of ten years after December 12, 1958.

In arguing for the denial of the defendant's motion, Weyerhaeuser contends that there is no substantial identity of issues in this action and in the California action. It claims, inter alia, that no issues relating to the validity of the original patent are properly before me, and that no issues relating to the validity of the reissue patent are properly before the District Court for the Northern District of California.

This contention is clearly without merit. Granted that neither Engineering nor Machinery has manufactured or sold flap cutters since the date of the reissue patent, it is plain that an actual controversy exists between them, or one of them, and Weyerhaeuser with respect to the reissue patent. It is undisputed that Bostitch has indicated its intention to manufacture and sell flap cutters pursuant to the license granted to it by Machinery and in accordance with the drawings and patterns prepared by the latter. If, therefore, Bostitch is infringing the plaintiffs' reissue patent by manufacturing, selling and/or offering such flap cutters for sale, then Machinery, its licensor, is liable as an infringer under 35 U.S.C.A. § 271(b) which provides that:

"Whoever actively induces infringement of a patent shall be liable as an infringer."

It is clear that this section is designed to protect a patentee against one who aids and abets the direct infringer. Freedman v. Friedman, 4 Cir., 1957, 242 F.2d 364; Jones v. Radio Corporation of America, D.C.N.Y.1955, 131 F.Supp. 82. And see S.Rept. 1979, 82 Cong., 2d Sess. (1952) at page 28; 35 U.S.C.A. § 271, Reviser's Note. This section embodies that conduct which was termed in the pre-existing case law as "contributory infringement"; and it is manifest that Machinery's acts bring it squarely within that concept. Compare Rohm & Haas Co. v. Roberts Chemicals, Inc., 4 Cir., 1957, 245 F.2d 693; Electric Pipe Line, Inc. v. Fluid Systems, Inc., 2 Cir., 1956, 231 F.2d 370; Trent v. Risdon Iron & Locomotive Works, 9 Cir., 1900, 102 F. 635; Conmar Products Corp. v. Tibony, D.C. N.Y.1945, 63 F.Supp. 372. And even though the grant of said license and the delivery of said designs and patterns occurred before the date of the reissue patent, such acts would constitute infringing conduct if they were performed with intent to infringe the forthcoming reissue patent or with intent that said infringing conduct would continue after the reissue patent was granted. Barrett v. Sheaffer, 7 Cir., 1918, 251 F. 74; Jones v. Radio Corporation of America, supra.

Furthermore, it should be noted that the validity of the reissue patent and its infringement by plaintiffs' machines are put in issue by the supplemental complaint heretofore filed in the California action; and it is not within my province to determine the sufficiency of that complaint.

Insofar as the original patent is concerned, it is equally apparent that its validity is also in issue in the instant action. It contains twenty-nine claims, each of which is embodied verbatim in the reissue patent. 35 U.S.C.A. § 252, dealing with the effect of reissue, explicitly provides that " * * * the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent." And see Baltz v. Botto, D.C.Tenn.1956, 147 F. Supp. 468, at page 476. Thus the issues of the validity and of the infringement of each and every claim of the original patent, as continued by the reissue patent, must be determined in this proceeding. And a prior determination of these issues in the California action will be dispositive of these issues here, since Machinery, a plaintiff in that action, and Bostitch, the defendant here, are in

privity by reason of the former's contractual agreement to indemnify the latter from any loss resulting from a claim of infringement. See Urbain v. Knapp Bros. Mfg. Co., 6 Cir., 1954, 217 F.2d 810, certiorari denied 1955, 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260. And see Note, The Enforcement of Rights against Patent Infringers, 1959, 72 Harvard Law Rev. 328 at page 336.

Finally, Weyerhaeuser contends that there has been no satisfactory showing of financial responsibility on the part of Engineering and/or Machinery such as would warrant me in staying the instant action. Weyerhaeuser's argument in this regard is clearly patterned after the holding in American Chemical Paint Co. v. Thompson Chemical Corp., 9 Cir., 1957, 244 F.2d 64. In my judgment the question before the Court in that case was clearly different from that presented here. There the defendant manufacturer obtained an order enjoining the plaintiff patentee from commencing further similar suits against the defendant or its customers pending the determination of the principal action. In reversing the lower court's order, the Court of Appeals held that it was improper to enjoin the plaintiff from commencing similar suits against the defendant or its customers in the absence of a finding that the defendant was financially able to respond in damages for which it and its customers might be responsible. The effect of such an injunction is to create a change in the initial date of the period in which infringements give rise to the recoverability of damages or lost profits; and hence such an injunction would be an impairment of the patentee's rights unless the defendant was financially responsible.

Here the defendant does not seek an injunction staying the *institution* of similar actions by the plaintiff. It merely seeks a stay of the present action. As pointed out by the Court of Appeals for the Second Circuit in Bechik Products, Inc. v. Flexible Products, Inc., 2 Cir., 1955, 225 F.2d 603, there is a clear distinction to be drawn between the stay of an action already instituted and an injunction prohibiting the present institution of future actions. To stay this action can in no way affect the rights of the plaintiff against other infringers (including the H. & C. Companies, if they are in fact infringers).

In my opinion the financial responsibility of Engineering and Machinery is of no import in the consideration of the motion now before me.

It is clear that the California action and the instant action present common issues of fact and law. The fact that the California action also involves issues extraneous to this proceeding (e. g., Weyerhaeuser's claim against Hottendorf for alleged breach of a confidential relationship) is of no moment. The test here is —is there a possibility that a decree in the California action would be dispositive of the present action?

Having in mind the similarity of the issues involved in the California action and in this action, and the privity existing between the plaintiffs there and the defendant here, I am of the opinion that there is a very real possibility that a decree in the former action would be dispositive of the present action.

In addition, it is to be noted that Weyerhaeuser, Engineering and Machinery all maintain their principal offices in California. It may be fairly presumed that relevant evidence, documentary and otherwise, as well as material witnesses will be more accessible to a court sitting in California than to this Court. Furthermore, the need for comity among federal courts and the desirability of avoiding unnecessary trials have resulted in the evolution of a salutary rule of precedence under which the court first obtaining jurisdiction over the issues in dispute is deferred to by courts subsequently acquiring jurisdiction thereof. See, e. g., American Chemical Paint Co. v. Thompson Chemical Corp., supra; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., D.C.N.J.1956, 141 F.Supp. 645; cf. Crosley Corp. v. Hazeltine Corp., 3 Cir., 1941, 122 F.2d 925, certiorari denied

1942, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211; Bechik Products, Inc. v. Flexible Products, Inc., supra. And see generally Peterson, Multiple Patent Litigation, 1956, 8 Hastings L.Jour. 18.

█ In view of the relationship between the parties to both actions, the order in which said actions were commenced, the progress heretofore made in both, the similarity of the issues presented therein, and the substantial possibility that a decree in the California action will be dispositive of the instant action, it is my considered opinion that the ends of justice and the interests of all the parties concerned will be best served by staying the instant action pending the final determination of the California action.

Accordingly, the defendant's motion to stay is granted.