**NORDBERG MANUFACTURING CO.**
**and William C. McCormick, Plain-**
**tiffs-Appellees and Appellants,**

**v.**

**JACKSON VIBRATORS, INC., Defendant-**
**Appellant and Appellee.**

**Nos. 16228, 16229.**

United States Court of Appeals
Seventh Circuit.

April 3, 1968.

Alfred H. Plyer, Jr., Daniel C. McEachran, Chicago, Ill., for Nordberg; Parker & Carter, Chicago, Ill., of counsel.

Richard R. Wolfe, Phillip H. Mayer, John F. Bundock, Jr., Chicago, Ill., for Jackson Vibrators; Wolfe, Hubbard, Voit & Osann, Chicago, Ill., of counsel.

Before KILEY, SWYGERT and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Action for infringement of a patent.[1] McCormick, the patentee, and Nordberg, a licensee, are plaintiffs. The district court found the claims in issue valid, and that defendant Jackson, by reason of sale of its Gandy Dancer and Servo Chief machines induce the railroads who purchase them to infringe the method claims and an apparatus claim.

Both parties appealed, plaintiffs being dissatisfied with the scope of relief awarded.

We are dealing with the process of raising railroad track to a smooth vertical profile after it has been depressed and made uneven by the passage of trains. The process is called surfacing.

*Prior art: the spotboard or high point method.* Traditionally the foreman put a sightblock or peep block on one rail of corrected track and put a spotboard a feasible distance ahead on uncorrected track, at a visually selected high point. A jacking crew went a short distance ahead of the sightblock, placed a "rabbit" block on the rail, and jacked the track. The foreman looked through a hole in the sightblock at the target marked on the spotboard and stopped the jacking crew when the top of the rabbit block reached the line from the target to his eye. A level was used to determine when the opposite rail had been brought to the same level. After tamping or wedging the track to hold it in place, the crew moved the rabbit block toward the spotboard and repeated the process. When the rabbit block got close to the spotboard, the spotboard was moved ahead to a new high point. The sightblock was moved ahead as convenient, sometimes when the spotboard was moved and sometimes when it was not.

After mechanical, power driven tampers were developed, this method of surfacing the track was too slow to keep ahead of them.

*The McCormick method.* McCormick concluded that the surfacing process could be speeded by using a rig with three connected stations, mounted on carriages, which could be moved ahead a short distance after each jacking operation, but always moved as a unit. What he called in his claims a "positive reference line" (a tensioned wire in the rig described in the specifications), would be established between the forward and rear stations. The intermediate carriage would be a track jack, equipped with a device in contact with the surface of the rails and so arranged as to indicate when they had been raised to the desired distance from the positive reference line. (The specifications describe an indicator which registers the desired height as a result of contact with the tensioned wire.) The intermediate carriage would be closer to the rear than to the forward station, and the specifications reveal that this is done so that any error in the desired elevation of the positive reference line resulting from the location of the forward station on uncorrected track will be less than one half as great at the intermediate station as at the forward station. It is suggested the spacing ratio might be as low as 3 to 2 in special circumstances, but should usually be higher, and that this "irons out or spreads" the irregularities.

Claim 1. of the patent, which is representative for the purpose of this discussion, reads as follows:

"A method of doing work on an existing track to adjust it to a reference line which includes the steps of establishing a positive reference line along the track between movable forward and rear stations which are spaced apart a substantial distance, establishing an intermediate station between the forward and rear stations, spacing the intermediate station sufficiently nearer the rear station than the forward station but sufficiently forward of the rear station relative to the characteristics of the track so that when work is done at the intermediate station the track will not be affected at

---

1. No. 2,962,979, Method of Correcting Existing Track and Alignments and Means for Practicing It, Dec. 6, 1960 to William C. McCormick.

the rear station and the position of the rear station and the relation of the reference line to the track at the rear station will remain unaffected, doing work at the intermediate station to change the relation of the track to the reference line, terminating the work when the track at the intermediate station has been brought to an adjusted predetermined relation to the reference line, moving the rear, intermediate and forward stations forward in a sequence of steps, each of which is no longer than the distance between the intermediate and rear stations so that the rear station will be on adjusted track at all times, successively doing work to the track to adjust it, between steps, at the intermediate station to bring the track at the intermediate station to an adjusted predetermined relation to the reference line, and maintaining the relative spacing between the rear, intermediate and forward stations while work is being done."

*The Jackson machines.* The Gandy Dancer and Servo Chief combine a self-propelled tamper with devices for raising the rails to the desired elevation before tamping. The Gandy Dancer tamper pushes ahead of it a track jack mounted on a carriage. The Servo Chief tamper carries a track jack attached to its front end. In each case there is also a forward buggy which runs ahead on the track and carries lamps which direct light back toward the track jack and tamper. The forward buggy has its own driving power, though controlled from the tamper or by the foreman by radio. It may, but need not be, attached to the track jack by a metal "leash" on a spring coil, so arranged that although the forward buggy does not move exactly in unison with the track jack and tamper, the distance between them is never less than the leash is set for, and varies within only a few feet from that.

There is a photo-sensitive device, or light sensor, mounted near the rear end of the tamper. At the track jack there is a rod extending upward from the surface of one rail, at the top of which is a light-mask. The light-mask shields the light sensor from the light emanating from the forward buggy except for such light as passes through a narrow horizontal slot in the mask. The slot and the center portion of the sensor are the same distance above the rail surface. The lights on the forward carriage are a slightly greater distance above the track. Controls are so arranged that when the light passing through the slot falls on the lower portion of the light sensor, the jack lifts the track.[2]

In all three methods described there is a forward station on uncorrected track, an intermediate station on uncorrected track, and a rear station on corrected track; there is at least an imaginary line from a point on the forward station to a point on the rear station, and the track is raised at the intermediate station so that the surface is the same distance from the line at that station as at the rear station.

One difference between McCormick's method and the spotboard method is that the relationship between the three stations remains constant, with the intermediate station closer to the rear. It was this difference which led the district court to conclude that the McCormick method was not anticipated and, in the light of other evidence, not obvious. And the court concluded that when a Jackson machine was used with the buggy attached to the jack and tamper by the leash, the relationship between its stations was constant and such use infringed. The court found that Jackson induced infringement by equipping its machines with leash and reel and giving instructions for such use in the operation manual. The court limited its finding of contributory infringement to that type of sale.

### Validity.

Taking steps or concepts individually, several which are incorporated in Claim

---

2. Apparently there are other means by which the surfaces of the two rails are kept level with each other.

1. were anticipated in prior art. Similarities to the spotboard method have already been pointed out.

The specifications point out that means other than a tensioned wire, including a ray of light or radar beam, may constitute a "positive reference line". A memorandum filed with amended claims states that it was agreed at an interview that a line of sight may constitute a "positive reference line". Clearly a line of sight is the reference line in the spotboard method. But the district court found, with ample support, that, although it would be possible to move the three stations simultaneously, this was not part of the method in practice. Thus, even if the line of sight be deemed a "positive reference line" the spotboard method does not include the process of moving the positive reference line down the track, maintaining a constant spacing among the three stations.

*Piersaul* [3] disclosed a unit with two four-wheel railroad trucks, and a frame extending from one to the other. There was a device half way between the trucks to measure the distance from the rail surface to the frame. The frame would amount to a positive reference line, and the spacing between its ends and midpoint remained constant as it was moved, of course. But even if *Piersaul* were viewed as disclosing a positive reference line, moved without changing the spacing, it did not disclose the McCormick idea of the intermediate station closer to the rear.

*Hursh* [4] discloses a car equipped with both jack and tamper. The rear wheels of the car are to be on corrected track, the front wheels on uncorrected. A telescope is mounted above the front wheels, apparently parallel with the wheel base of the car. The track is jacked near the front end. A rod is held by a man some distance ahead on uncorrected track. A target is set on the rod at such elevation that the target will not be lined up with the telescope until the track under the front end of the car has been raised to the desired level.

*Hursh* not only fails to maintain a constant spacing between the forward and intermediate stations, but it has no positive reference line. There is an imaginary reference line, perhaps, connecting the target with some point above the rear wheels of the car, but the line of sight does not coincide with it until the rails at the front of the car have been raised to the desired height.

In our opinion the district court adequately followed the required steps in considering whether the subject matter would have been obvious to a person having ordinary skill in the art. He found it would not have been. The spotboard method involved placing the forward station at a high point. The evidence was that people skilled in the art considered this essential to a satisfactory result, and the use of a high point can not be associated with the use of a rig of constant length, moving a short distance along the track after each jacking operation. McCormick's idea of "ironing out" irregularities by doing the jacking and measuring near the rear station apparently compensated sufficiently for the advantages of uniformly locating the forward station on a high point, but the court found that there was great resistance of people skilled in the art when it was explained to them. The court pointed out that the need for a method of surfacing speedier than the spotboard method existed for some years before McCormick devised his method and that machines produced by plaintiff Nordberg and employing McCormick's method (though with improvements) have been highly successful. We think the court correctly resolved the obviousness issue.

We acknowledge that in the rejection of one of McCormick's applications at an earlier stage, the patent office said: "Merely stationing the intermediate car

3. No. 1,599,622, Track Gauge and Level-Indicating Device issued Sept. 14, 1925 to Joseph Piersaul.

4. No. 2,734,463, Railway Track Ballast Tamping Apparatus, issued Feb. 14, 1950 to S.R. Hursh, et al.

at some point other than the center of the assemblage would involve only a change in degree not amounting to invention since no unobvious result would be produced." Nevertheless the claims in issue were later allowed, and the patent is to be presumed valid.

The record in this action contains much information about the background of the spotboard method, and the significance of the location of the intermediate station nearer the rear station in achieving the desired result. The examiner may not have had equivalent information. Therefore we do not consider the earlier pronouncement of the patent office binding on this issue.

■ Defendant Jackson contends that McCormick's claims do not particularly point out and distinctly claim the subject matter regarded as the invention.[5] It is true that important terms in Claim 1. are vague, standing by themselves. This is a close question, but we conclude that when these terms are considered together with the specifications, their meaning is sufficiently distinct.

We have already mentioned references in the specifications which suggest definitions of "positive reference line".

The forward and rear stations are to be spaced apart a "substantial" distance. In examples in the specifications, this distance is 125 feet, or "of the order of 120′ to 125′."

Although the claim language contains no guide by which to determine whether the intermediate station is "sufficiently nearer" the rear station than the forward station, we have already pointed out that the specifications indicate the range and the purpose to be served by such placement.

### Infringement.

■ The district court concluded that when the Jackson machines were operated so that constant spacing was maintained, their operation infringed upon the McCormick method claims, and when the leash was attached, the machine infringed the apparatus claim. Apparently he concluded that the light beam in the Jackson operation was the "positive reference line" of McCormick, or its equivalent.

We hold this was error, not because a beam of light could not be a positive reference line, but because there is no positive reference line, within the meaning of the McCormick claims, in the Jackson machine.

The situation is somewhat similar to *Hursh*, already discussed. There is an imaginary line connecting the light on the forward buggy with the center portion of the sensor at the rear of the tamper. That imaginary line could be considered a reference line for the purpose of the track surfacing operation. The distance between that line and the surface of the track at the track jack is what counts. When such distance is greater than the distance at the sensor the automatic controls cause the jacks to raise the track. When the distance is equal to the distance at the sensor, the jacking stops.

It is true that there is a beam of light which shines from the light to the sensor, but the line which it marks is not the reference line, except that at the termination of the operation they coincide. The distance from the surface of the rail to the line followed by the beam of light, measured at the intermediate station, is constant at all times during the operation.

Plaintiffs are precluded by file wrapper estoppel from asserting that the way in which the light beam is employed in the Jackson machines is equivalent to the use of a light beam as a positive reference line in the McCormick sense. When McCormick's claims referred only to "establishing and thereafter maintaining a reference line", the patent office rejected them because the examiner concluded that *Hursh* "establishes a reference line" from the target on the rod to a point at the rear of the car. McCormick's response was to amend his claims to include

5.  35 U.S.C. sec. 112.

the "positive reference line" concept, "which Hursh clearly does not have." McCormick having disclaimed a reference line which is imaginary can not now reclaim it.

Although we are of the opinion that the claims in issue are valid, as found by the district court, we conclude that the operation of the Jackson machines, even when spacing is held constant, does not infringe the method described, and defendant does not induce infringement by selling them.

The judgment will be reversed and cause remanded with instructions to dismiss the complaint.