The PROCTER & GAMBLE
COMPANY, Plaintiff,

v.

NABISCO BRANDS, INC., Defendant.

The PROCTER & GAMBLE
COMPANY, Plaintiff,

v.

KEEBLER COMPANY, Defendant.

The PROCTER & GAMBLE
COMPANY, Plaintiff,

v.

FRITO–LAY, INC., Defendant.

Civ. A. Nos. 84–333 LON to
84–335 LON.

United States District Court,
D. Delaware.

March 20, 1985.

Robert H. Richards, III, E. Norman Veasey, Jane R. Roth, of Richards, Layton & Finger, Wilmington, Del., Jerome G. Lee, Harry C. Marcus, John F. Sweeney, of Morgan, Finnegan, Pine, Foley & Lee, New York City, Julius P. Filcik, Rose Ann Dabek, Richard C. Witte, of The Procter & Gamble Co., Cincinnatti, Ohio, for plaintiff.

Douglas E. Whitney, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Paul H. Heller, of Kenyon & Kenyon, New York City, for defendant, Nabisco Brands, Inc.

Howard M. Handelman, Jeffrey M. Weiner, of Bayard, Handelman & Murdoch, Wilmington, Del., Daniel M. Riess, David Lesht, of Lockwood, Alex, FitzGibbon & Cummings, Chicago, Ill., Craig S. Stevens, Walter S. Maker, of Keebler Co., Elmhurst, Ill., for defendant, Keebler Co.

James F. Burnett, of Potter, Anderson & Corroon, Wilmington, Del., Wayne M. Harding, Paul M. Janicke, Peter J. Shurn, III, Thomas A. Miller, of Arnold, White & Durkee, Houston, Tex., Steven R. May, Ronald R. Kranzow, Terry D. Dreyer, of Frito-Lay, Inc., Dallas, Tex., for defendant, Frito-Lay, Inc.

## OPINION

LONGOBARDI, District Judge.

The Plaintiff, The Procter & Gamble Company ("P & G"), brought these actions alleging patent infringement, inducement of patent infringement and unfair competition.[1] The patent in question, Patent No. 4,455,333, was issued to P & G on June 19, 1984, for an invention entitled "Doughs and Cookies Providing Storage—Stable Texture Variability." The patent covers a method of manufacturing ready-to-serve cookies which remain crispy on the outside and chewy on the inside for an extended shelf life. P & G markets these cookies under the Duncan Hines label.

P & G brought separate actions against each of the three Defendants. Nabisco Brands, Inc. ("Nabisco"), the Defendant in Civil Action No. 84-333, markets its own line of dual-textured cookies under the "Almost Home" and "Chewy Chips Ahoy" labels. Civil Action No. 84-334 was brought against Keebler Company ("Keebler") which markets "Soft Batch" cookies while Civil Action No. 84-335 was brought against Frito-Lay, Inc. ("Frito-Lay") for its

---

1. P & G's original complaint also contained a count alleging "threatened patent infringement." This count was later dropped by stipulation. C.A. 84-334, Docket Item ("D.I.") 19.

"Grandma's Rich 'n Chewy" cookies. Each of the Defendants has denied that P & G's patent is valid or infringed by their products. Each of the Defendants has also denied P & G's allegations of unfair competition and has counterclaimed alleging acts of unfair competition by P & G.

Currently before the Court are Defendants' motions to dismiss the inducement of infringement claim and to consolidate the cases for some purposes but to bifurcate the trial of certain other issues. The validity of P & G's patent is at issue in all three actions and all parties agree that one consolidated trial should be held on the validity issue. Defendants have filed a joint motion urging that the infringement and unfair competition issues be not only tried separately from the validity issue but also individually as to each Defendant. P & G has urged that all three actions be consolidated and that one trial on the issues of validity, infringement and unfair competition be held. All parties have agreed that the liability phase of the lawsuits should be tried separately from the damages phase.

Defendants Frito-Lay and Keebler have also moved under Fed.R.Civ.P. 12(b)(6) to dismiss P & G's inducement of infringement count for failure to state a claim. Defendant Nabisco has not filed a motion to dismiss on the same basis but has raised substantially the same issue as an affirmative defense. C.A. 84–333, Docket Item ("D.I.") 18, p. 6.

## I. MOTION TO DISMISS INDUCEMENT OF INFRINGEMENT COUNT

P & G charges that the Defendants induced retailers to infringe its patent in violation of 35 U.S.C. § 271(b) by selling large quantities of their cookies to retailers just before the patent issued with the "knowledge, belief or expectation" that a substantial portion of the cookies would be sold by the retailers after the patent is-

sued. C.A. 84–333, D.I. 1, p. 4; C.A. 84–334, D.I. 1, pp. 4–5; C.A. 84–335, D.I. 1, pp. 4–5.

Defendants have moved to dismiss for several reasons. First, they argue that there can be no liability for inducement of infringement based on actions taken before the patent issued. Defendants also assert that liability for inducement of infringement requires knowledge that the actions would result in infringement of a patent and that mere knowledge of a pending patent application does not satisfy this requirement. Finally, they argue that P & G cannot simultaneously maintain actions for direct infringement and inducement of infringement.

Title 35, section 271 of the U.S.Code governs both direct infringement and inducement of infringement of a patent: "(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent. (b) Whoever actively induces infringement of a patent shall be liable as an infringer."

■ There can be no liability for inducement of infringement under section 271(b) unless an actual infringement in violation of section 271(a) is induced. *Stukenborg v. Teledyne, Inc.*, 441 F.2d 1069, 1071–72 (9th Cir.1971); *Warner and Swasey Company v. Held*, 256 F.Supp. 303 (E.D.Wis.1966).

P & G claims that Defendants' sales to retailers in the period before the patent issued induced infringing sales by the retailers after the patent issued. Although conceding that Defendants could not be liable for direct infringement based on their pre-issuance sales, P & G argues that the Defendants are liable for inducement of infringement.

Section 271(b) and section 271(c) codify the common law action for contributory infringement.[2] S.Rep. No. 1979, 82nd

---

**2.** 35 U.S.C. § 271(c) provides as follows:

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in

practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such

Cong., 2d Sess., *reprinted in* 1952 U.S. Code Cong. & Ad.News 2394, 2421; *Nordberg Mfg. Co. v. Jackson Vibrators, Inc.,* 153 U.S.P.Q. 777, 783 (N.D.Ill.1967), *rev'd on other grounds,* 393 F.2d 192 (7th Cir. 1968); 4 Chisum on Patents § 17.04[1] at 17.45. Section 271(c), which imposes liability for contributory infringement by sale of a component of an infringing device, explicitly requires knowledge that the component is "especially made or especially adapted for use in infringement" of a patent. The United States Supreme Court has interpreted section 271(c) to require knowledge by the contributory infringer "that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Co.,* 377 U.S. 476, 488, 84 S.Ct. 1526, 1533, 12 L.Ed.2d 457 (1964).

█ Although section 271(b) does not explicitly require knowledge, most courts and commentators have concluded that liability can be imposed only for knowing and intentional inducement of infringement. *Sims v. Western Steel Co.,* 551 F.2d 811, 817 (10th Cir.1977); *Knapp-Monarch Co. v. Casco Products Corp.,* 342 F.2d 622, 626–27 (7th Cir.1965); *Electronized Chemicals Corp. v. Rad-Mat, Incorporated,* 288 F.Supp. 781, 784 (D.Md.1968) (dictum); *Nordberg Mfg. Co. v. Jackson Vibrators, Inc.,* 153 U.S.P.Q. at 784; 4 Chisum on Patents § 17.04[1] at 17.46; Miller, *Some Views on the Law of Patent Infringement by Inducement,* 53 J.Pat.Off.Soc. 86, 119 (1971); *contra, Hauni Werke Koerber & Co., KG. v. Molins Ltd.,* 183 U.S.P.Q. 168, 171 (E.D.Va.1974) (dictum). Liability under section 271(b) requires a state of mind at least as culpable as is required for liability under section 271(c). *Nordberg,* 153 U.S.P.Q. at 784; *Electronized Chemicals,* 288 F.Supp. at 784; 4 Chisum on Patents § 17.04 at 17–47; *See also, Sims v. Western Steel Co.,* 551 F.2d at 817 (inducer must be in the nature of an accessory before the fact to the infringement).

patent, and not a staple article or commodity of commerce suitable for substantial noninfr-

█ On the other hand, mere knowledge that an application for a patent is pending is not sufficient to constitute the knowing and intentional inducement required for a violation of section 271(b). Such a conclusion would be tantamount to extending the period of monopoly based on speculation because there would be no definite knowledge that a patent will issue and what the claims parameters of the patent will be. To merely state the premise by force of logic establishes the absence of the knowledge and intention required for liability.

Defendants argue that even if they had the requisite knowledge and intent, section 271(b) does not apply to actions taken before the patent issues. Although a number of courts have alluded to this issue, there is little direct authority. The Court must, therefore, examine the language of the statute, its legislative history and the purposes behind it in an attempt to discern its meaning.

█ Section 271(a) specifically imposes geographic and temporal limits on liability for direct infringement. Liability for infringement, for example, is limited to acts occurring "within the United States" and they must occur "during the term of the patent." On the other hand, sections 271(b) and 271(c) do not contain such restrictions. As a consequence, in section 271(b) cases, courts have readily ignored the geographic limitations of section 271(a) and have imposed liability for acts of inducement occurring outside the United States provided they result in a direct infringement within the United States. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir.1975); *Engineered Sports Products v. Brunswick Corp.,* 362 F.Supp. 722, 727 (D.Utah 1973); *Hauni Werke Koerber & Co., KG. v. Molins Ltd.,* 183 U.S.P.Q. at 170. The decisions suggest what has already been alluded to in previous parts of this opinion; that is, that under section 271(b) there can be no violation unless and until there is a direct infringement. It is the direct infringement

inging use, shall be liable as a contributory infringer.

which ripens the cause of action of section 271(b) and, without an act of direct infringement, there can be no liability for inducement of infringement. They also suggest that there is a real difference in the omission as to geographic limitations between section 271(a) and section 271(b). Considering the nature of the violation of section 271(b) and the willingness of the courts to disregard national boundaries under section 271(b), it would be most difficult to argue that temporal limitations do apply. In fact, logic suggests that having met the necessary burden of proof, why should one not be liable for inducement of a direct infringement regardless of the time and place of the acts of inducement so long as a viable direct infringement results. It is too much to suggest that the differences in section 271(a) and section 271(b) are mere Congressional oversights.

The legislative history of section 271(b) clearly indicates that it was intended to codify the common law on contributory infringement. S.Rep. No. 1979, 82nd Cong., 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Ad.News 2394, 2421; *Hautau v. Kearney & Trecker Corporation,* 179 F.Supp. 490, 492 (E.D.Mich.1959); *Weyerhaeuser Timber Company v. Bostitch, Inc.,* 178 F.Supp. 757, 760 (D.R.I.1959). The doctrine of contributory infringement was developed by the courts long before section 271 was enacted in 1952. Most commonly, it was applied where a patent covered a combination or process. Competitors of the patentee could profit from his invention but avoid liability for direct infringement by selling all but one element of the combination. The buyer would then assemble the ·final product. While the patentee could always sue the buyer for direct infringement, this was often impractical because the product was sold to thousands of consumers. *Note,* Section 271(b) of the Patent Act of 1952: Confusion Codified, 66 Yale L.J. 132 (1956); Roberts, Contributory Infringement of Patent Rights, 12 Harv.L. Rev. 35, 39–40 (1898); *Alabastine Co. v. Payne,* 27 F. 559 (C.C.N.D.N.Y.1886). Contributory infringement was a broad equitable doctrine designed to cover activities

which did not constitute direct infringement but which intentionally contributed to a direct infringement. Roberts, 12 Harv.L. Rev. at 44.

■ P & G alleges that Defendants, knowing that the grant of a patent was imminent, "flooded the market with infringing products with the knowledge, belief or expectation that.a substantial portion if not all of said cookies would be the subject of infringing retail sales to the public after the patent issued." D.I. 1, pp. 4–5. As a practical matter, P & G cannot bring an action against thousands of retailers. This is particularly true because these same retailers are the customers for P & G's own products. This case involves the same risk of harm to the patentee as the cases which applied the common law doctrine of contributory infringement. The Defendants have allegedly evaded an action for direct infringement by rushing shipments to retailers and Plaintiff has no practical remedy for the direct infringement. The doctrine of contributory infringement was developed to protect against these very acts. Under the circumstances, the legislative intent to codify the common law rule will best be effectuated by allowing this count to remain.

Such a conclusion is not without some support in reported cases. Several other courts have concluded that liability for inducement under section 271(b) can be based on pre-issuance activities. *Jones v. Radio Corporation of America,* 131 F.Supp. 82, 84 (S.D.N.Y.1955); *Weyerhaeuser Timber Company v. Bostitch, Inc.,* 178 F.Supp. at 760 (dictum); *Hauni Werke Koerber & Co., KG. v. Molins Ltd.,* 183 U.S.P.Q. at 170 (dictum). Keebler, however, argues that these cases are inconsistent with the reasoning of the Supreme Court in *Brulotte v. Thys Co.,* 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964). In *Brulotte,* the Court held that licenses for a patented machine which required royalty payments to continue after the patent expired constituted patent misuse. The Court declared that there was a strong public policy against

continuing patent rights beyond the seventeen year term of the patent.

*Brulotte* is distinguishable from this case. In *Brulotte,* royalties were collected for use after the patent expired. In this case, although the activities giving rise to liability took place before the patent was issued, damages will be based only on direct infringement during the term of the patent. Thus, the effect is not to extend the monopoly of the patent beyond its seventeen year term but, rather, this construction of the statute protects the patent holder from those acts of infringement occurring *during* the term of the patent for which he would otherwise have no practical remedy.

■ Finally, the Court sees no merit to Defendants' contention that P & G cannot simultaneously maintain an action for direct infringement and inducement of infringement. The cases cited by Defendants deal with attempts to bring an action for inducement of infringement based on the *same items* for which Plaintiff could have brought an action for direct infringement. *Self v. Fisher Controls, Co., Inc.,* 566 F.2d 62 (9th Cir.1977); *Gould-National Batteries, Inc. v. Sonotone Corp.,* 130 U.S. P.Q. 26 (N.D.Ill.1961). The only reason for bringing an inducement action in those cases was to obtain venue in a district in which no acts of direct infringement were committed. Here, however, Plaintiffs could not bring an action for direct infringement based on pre-issuance sales. The fact that they have brought a direct infringement action for cookies sold after the patent issued is not a reason to deprive them of a remedy for pre-issuance activities culminating in a direct infringement within the seventeen year period of the patent.

One commentator, after reviewing the case law on pre-issuance activity resulting in liability under section 271(b), has formulated the rule as follows: "(1) acts of inducement committed prior to the issuance of a patent are actionable under section 271(b) only when they proximately and intentionally result in actual direct infringe-

ment after the issue date, and (2) damages awarded under section 271(b) are always measured from the issue date of the patent." Miller, 53 J.Pat.Off.Soc. at 119. The Court believes that such a standard is not sufficiently broad because it has no reference to the element of knowledge.

On the other hand, if the Plaintiff could prove that Defendants knew that a patent would issue and that its claims would cover Defendants' products, then there is no reason why a defendant could or should escape liability for inducement of infringement. The burden of proof is undoubtedly great but the purpose in granting monopoly power can only be fostered by providing this kind of protection.

■ Under such a claim, time, naturally, will be a factor to be considered in the attenuation of the basis for liability. There is no mathematical formula or fixed temporal limit which could be applied mechanically to determine liability. Rather, the application of this theory of liability under section 271(b) contemplates a factual resolution of the issues of knowledge and intent and the establishment of some causal connection between those issues and the actual infringement alleged to have been induced.

In considering a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations of the complaint as true. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Leeward Petroleum, Ltd. v. Mene Grande Oil Co.,* 415 F.Supp. 158 (D.Del.1976). Plaintiff is entitled to the benefit of all reasonable factual inferences and the motion to dismiss will be granted only if it appears certain that no relief could be granted under any set of facts which could be proven. *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). Based on the foregoing analysis, the Court concludes that Plaintiff's allegations of inducement to infringe allege a violation of section 271(b) which Defendants will be required to defend.

The Defendant, Frito-Lay, by letter dated February 21, 1985, cites *The Standard Oil*

*Company v. Nippon Shokubai Kagaku Kogyo Co., Ltd.,* 754 F.2d 345 (Fed.Cir. 1985), for the proposition that pre-patent acts of inducement cannot provide a basis for liability under section 271(b). A cursory review of some language of the opinion could lead one to hastily conclude that *Standard Oil* is very pertinent to the case at hand. After analysis, however, it is apparent that the opinion refers to fixing a time at which inducement-to-infringement acts commences the running of the applicable statute of limitations. The opinion does not decide whether liability could attach to pre-patent acts of inducement that result in direct infringement during the patent period. Admittedly, the Court speaks of no "liability" based on later acts. On the core issue of whether the inducement to infringement acts occurred within the applicable statute of limitations, the Court made it clear that "liability" refers to fixing the time when the statute of limitations begins to run not to the question of when acts of inducement to infringe become viable violations of section 271(b). Under these circumstances, *Standard Oil* is of little help to the Defendant, Frito-Lay.

## II. DEFENDANTS' MOTION TO CONSOLIDATE AND BIFURCATE

■ Defendants cite two major deficiencies to support their claim that P & G's patent is invalid: lack of novelty in violation of 35 U.S.C. § 102 ("the section 102 claims") and obviousness in violation of 35 U.S.C. § 103 ("the section 103 claims"). All parties agree that it would be wasteful and duplicative to try every issue in all the cases separately for each Defendant. Defendants propose two alternative methods for avoiding this duplication. One alternative is to hold one consolidated trial for all three Defendants covering all of the invalidity claims. The infringement and unfair competition claims would be bifurcated from the invalidity claims and a separate trial on these issues would be held for each Defendant. Defendants' second alternative would additionally bifurcate the trial on the invalidity claims. First, a trial would be held on the section 102 claims followed, if necessary, by a trial on the section 103 claims.

P & G agrees that the trial on the invalidity claims should be consolidated but argues that the infringement and unfair competition claims should not be bifurcated. Instead, P & G proposes one consolidated trial on the invalidity, infringement and unfair competition claims against all three Defendants. All parties agree that the liability phase of the infringement claim should be bifurcated from the damages phase.

Bifurcation is governed by Rule 42(b) of the Federal Rules of Civil Procedure:

(b) **Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate a trial is committed to the informed discretion of the trial judge based on the particular facts and circumstances of each case. *Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978). In *Akzona v. E.I. DuPont de Nemours & Co.,* 607 F.Supp. 227, 232 (D.Del.1984), this Court outlined the factors to be considered in ruling on a motion to bifurcate. The Court must weigh the potential for confusion, delay, prejudice or additional expense resulting from the grant or denial of the motion. Bifurcation may be advisable if the case contains a large number of dissimilar or complex issues, if the trial of one issue is likely to be much shorter than the others or if the determination of the issues in the first trial may eliminate the need for a second trial. Conversely, bifurcation will often be

inadvisable if there would be a substantial overlap between the issues to be proved at both trials.

If Defendants succeed in demonstrating that P & G's patent is invalid, there would be no need for a trial on infringement. However, the significance of this factor is weakened by Defendants' failure to demonstrate that a trial on infringement would be either long or complex. Based on the current record, Defendants have failed to demonstrate that there are substantial and complicated issues incident to the defense of the infringement action. In response to an interrogatory from P & G requesting the basis for their claim of noninfringement, Defendants merely stated that an invalid patent cannot be infringed. Defendants have thus done little to counter P & G's argument on the insignificance of the infringement trial.

Further, the infringement trial, regardless of which side prevailed, would not eliminate the need for a trial on the unfair competition claims. P & G's unfair competition claims are based on allegations that Defendants wrongfully obtained trade secrets covering efficient methods of producing cookies. These claims do not depend on the validity of the patent.

The Court must also consider whether the issues involved are so complex that confusion or prejudice is likely if they are tried together. As all parties have noted, P & G's patent covers simple baking techniques, not high technology. The infringement claims involve a straightforward comparison between the claims in the patent and the formulation of the Defendants' cookies. While Defendants have made much of the fact that thirteen different types of cookies are involved, most appear to be quite similar to each other. P & G has stipulated that it will rely on the same six claims in its patent for each of the Defendants' cookies. Correspondence of Jan. 4, 1985, from Plaintiff's counsel. Finally, the unfair competition claims involve simple acts of industrial espionage allegedly committed by Defendants' employees.

The Court accordingly finds that there is little danger of confusion if a single trial is held on all issues.

Defendants cite two potential sources of prejudice if a single trial is held on all issues. First, they argue that proof of facts of unfair competition by one Defendant may stigmatize the other Defendants. Second, the Defendants are all competitors of each other and they are concerned that their trade secrets might be exposed to their co-defendants during a consolidated trial on infringement.

If this were a jury trial, Defendants' concern about being unfairly stigmatized might be well-founded. However, this will be a non-jury trial. Acts of malfeasance by one Defendant will not prejudice the Court against the other Defendants. The Court is also sensitive to Defendants' need to protect their trade secrets but is confident that this can be dealt with through an appropriate protective order.

The Court must also consider the overlap in the proofs required on the issues of validity and infringement. Both issues require the construction of P & G's patent claims. *See, Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1582, 1583 (Fed.Cir.1983). P & G's evidence on the commercial success of its product is relevant both to the issue of obviousness under section 103 and to the issue of infringement. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed.Cir. 1983). If bifurcation were granted, many of the same witnesses would be required to testify at both trials.

Finally, the Court must consider the potential for delay if separate trials are granted. Generally, "a single trial ... tends to lessen the delay, expense, and inconvenience to all concerned." 5 J. Moore, Moore's Federal Practice § 42.03[1] at 42–37 to 42–38 (2d ed. 1982). However, Defendants argue that delay would be minimal because discovery would proceed on all issues even if bifurcation were granted. Therefore, if P & G prevailed on the validi-

ty issue, the infringement trial could begin quickly.

Defendants' argument is unrealistic. In a case of this magnitude, the party which loses the validity trial will undoubtedly appeal. This alone is likely to delay the infringement trial by several months. Additionally, there would be further delays if a trial were necessary because of the need to accommodate the schedules of the Court and the parties. This process might have to be repeated twice if Defendants' alternative motion to bifurcate the section 102 and section 103 invalidity claims were adopted.

The Court, therefore, concludes that the facts and circumstances of this case indicate that a consolidated trial of the patent validity, infringement and unfair competition claims against all three Defendants would best promote the efficient and expeditious resolution of these claims. This conclusion is bolstered by the decisions of other courts faced with similar circumstances. *See, Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29 (N.D.Ill.1980); *Boots Aircraft Nut Corp. v. Kaynar Manufacturing Co.*, 188 F.Supp. 126 (E.D.N.Y. 1960). *See also, Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d at 1582–83; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d at 1540–41 (Fed.Cir.1983). Defendants' motion for consolidation and bifurcation will, therefore, be denied and Plaintiff's motion for consolidation will be granted. As all parties have agreed, the damages phase of the infringement trial will be bifurcated for later trial if necessary.