**Richard HORN and all others similarly situated, Plaintiffs–Appellees,**

v.

**CITY OF CHICAGO and Datacom Systems Corporation, Defendants–Appellants,**

and

**County of Cook, Morgan M. Finley, as Clerk of the Circuit Court of Cook County, and Charles Sawyer, Director of the Department of Revenue of the City of Chicago, Defendants.**

Nos. 87–1174, 87–1175 and 87–1936.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1988.

Decided Sept. 21, 1988.

As Amended Sept. 22, 1988 and Oct. 6, 1988.

Iris E. Sholder, Asst. State's Atty., Ruth M. Moscovitch, Corp. Counsel, Chicago, Ill., for defendant-appellants.

Rick Schoenfield, Ettinger, Schoenfield & Katz, Ltd., Chicago, Ill., for plaintiffs-appellees.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiffs[1] are 330,000 motor vehicle owners who paid delinquent parking tickets

---

**1.** Plaintiffs were originally divided into two subclasses. The district court held that the subclass of plaintiffs who received demand notices but

did not pay any money did not have standing to sue, because as to these plaintiffs there was no causal connection between the threatened de-

pursuant to demand notices processed by Datacom for the City of Chicago. The district court held that the demand notices violated plaintiffs' right to due process of law by failing to give sufficient notice that a hearing was available to contest their liability for the amount demanded. The court therefore ordered the City to provide a hearing on the parking violation and fine for any plaintiff who so desired. We hold that as a matter of law the demand notices provided constitutionally sufficient notice, and we therefore reverse the contrary finding of the district court.

## I.

When the Chicago Police Department alleges that a vehicle is parked in violation of a city ordinance, it places a citation ("ticket") on the vehicle. The ticket states, "Notice—this is a complaint for a parking violation." As the district court explained:

Upon issuance of the ticket, a court case is initiated in the Circuit Court of Cook County against the owner of the license plate listed on the ticket. *See* [Chicago Municipal] Code § 27–364(a). A defendant in such a case may plead guilty to the parking ordinance violation and pay the scheduled fine by mail or may appear in court to contest the ticket on the date set forth on the ticket. If the defendant fails to mail in the fine or appear on the court date, the Clerk of the Circuit court sends a "white card" notice of a second court date to the defendant. If the defendant fails to mail in the fine or appear on the second court date, the Clerk of the Court lists the defendant as being delinquent in paying traffic violation fines, but no judgment is entered against such defendants.

*Horn v. City of Chicago*, No. 85 C 6838, Memorandum Opinion at 3–4 (N.D.Ill. July 25, 1986) [available on WESTLAW, 1986 WL8450]. The tickets originally issued to plaintiffs in this case listed fines of $7, $10, or $15. Chicago hired Datacom, a private contractor, to collect these unpaid fines. Datacom subsequently mailed demand notices to plaintiffs. The original and later revised notices varied only slightly. The original notice read:

### CITY OF CHICAGO

### DEPARTMENT OF REVENUE

You can obtain additional information about this notice ONLY by writing to the address listed above or by calling (312)580–3400.

Our records indicate that the parking tickets listed below have not been paid. IF YOU DO NOT PAY THE TOTAL AMOUNT SHOWN BELOW IMMEDIATELY, THE CITY OF CHICAGO WILL TAKE FURTHER LEGAL ACTION AGAINST YOU. This may include preparing a verified petition in the Circuit Court of Cook County requesting that a DEFAULT JUDGMENT in the amount of $35 plus court costs be entered against you for each unpaid ticket.

You can avoid this action by mailing a check or money order in the total amount shown below. Make your check or money order payable to the Clerk of the Circuit Court. To insure proper payment write the ticket number(s) on the front of your payment and enclose the bottom portion of this notice with your payment. Mail only in the enclosed envelope. No information will be given or payment accepted at Traffic Court. DO NOT MAIL CASH.

TO PREVENT FURTHER ACTION YOU MUST RESPOND WITHIN 15 DAYS.

The original notice demanded $20 in "fines and penalties" for each unpaid ticket regardless of the amount listed on the ticket

---

fault judgment (the threatened injury) and the allegedly improper demand for payment (the challenged action). *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 2971, 86 L.Ed.2d 628 (1985). However, the court certified the class of plaintiffs who received the notices at issue and paid the money demanded, and granted summary judgment in their favor on their due process claims. *See infra.* The parties do not contest the certification decision. Accordingly, when we refer to "plaintiffs" we mean the certified subclass who paid the demanded fines and fees.

itself. Revised notices, sent to each alleged parking violator who did not respond to the original notice, demanded $35, and finally $50 for each unpaid ticket.[2] The original notices listed a sum labelled "AMOUNT NOW DUE;" the subsequent notices set forth the "TOTAL FINES AND FEES NOW DUE." The defendants collected almost $26,000,000 from May of 1985 to July of 1986 on hundreds of thousands of parking tickets.

Essentially, plaintiffs alleged that the defendants deprived them of due process of law in violation of 42 U.S.C. § 1983 by misrepresenting that plaintiffs owed fines, penalties, and court costs when no judgment had ever been entered against them [3]

in the traffic division of the circuit court.[4] Plaintiffs sought a preliminary injunction prohibiting the city from sending further notices and collecting any further fines, and ultimately sought an accounting followed by a refund (plus interest) to all who paid pursuant to the demand notices. Defendants moved to dismiss the complaint for failure to state a claim and on the ground that the district court should abstain from exercising jurisdiction under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[5] Plaintiffs amended their complaint and defendants again moved to dismiss on similar grounds. At the time the district court rendered judgment in this case, the only

2. The original and subsequent notices also demanded $3 for each unpaid ticket, a fee denominated "court costs" or "statutory mailing fee" depending on the notice.

3. The present status of the traffic court cases commenced by the serving of the parking ticket-complaints is unclear. The plaintiffs argue that no final judgment was ever entered by the traffic court and the cases were simply dismissed following payment. However, payment pursuant to the demand notices would seem to have resulted in a "final disposition" of these cases, *Horn*, No. 85 C 6838, slip op. at 10 n. 7; *Stelzik v. City of Chicago*, No. 85 CH 7631, slip op. at 8 (Cook County Circuit Court Jan. 21, 1986), under § 27–387(b) of the Chicago Municipal Code.

4. Plaintiffs also alleged that defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), by fraudulently demanding and collecting payments through the mail. The district court dismissed the RICO claim because it found that plaintiffs had been deprived of a hearing "but not necessarily of money," and therefore had suffered no "injury" within the meaning of 18 U.S.C. § 1964(c). The court also declined to exercise pendent jurisdiction over plaintiffs' state law claims of fraudulent misrepresentation and unjust enrichment. Plaintiffs do not contest these rulings and we therefore will not address them.

5. As defendants have argued, there may be a serious *Younger* problem here. *Younger* mandates abstention when a state's interests in pending state proceedings "are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987) (citation omitted). The *Younger* doctrine as originally announced applied to a federal action seeking an injunction against state

court proceedings, and the Supreme Court has declined to hold whether the doctrine is applicable to a § 1983 suit seeking damages. *Juidice v. Vail*, 430 U.S. 327, 339 n. 16, 97 S.Ct. 1211, 1219 n. 16, 51 L.Ed.2d 376 (1977). *See Jacobson v. Village of Northbrook Municipal Corp.*, 824 F.2d 567, 569 n. 4 (7th Cir.1987). However, the traffic court cases at issue were quasi-criminal proceedings of the type due deference by a federal court. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975); *Pennzoil*, 107 S.Ct. at 1526 & n. 9. The district court held that *Younger* abstention was not appropriate because there was "no longer a pending state proceeding that was brought prior to this suit," *Horn*, No. 85 C 6838, Amended Mem.Op. at 10 n. 7, in which plaintiffs could have presented their due process claims. The Traffic Division of the Circuit Court of Cook County has jurisdiction to entertain plaintiffs' constitutional arguments. *Jacobson*, 824 F.2d at 569. It is unclear, however, whether the Traffic Court proceedings were "pending" for purposes of *Younger* at the time the federal suit was filed, or whether "state procedural law barred presentation of [plaintiffs'] claims." *Pennzoil*, 107 S.Ct. at 1528. Plaintiffs justify their failure to move to re-open their parking infraction cases under § 2–1401 of the Illinois Code of Civil Procedure or appeal to the Illinois Appellate Court on the ground that no judgment was ever entered. *See* note 3 *supra*. But plaintiffs bear the burden of showing that they were unable to present their constitutional claims in state court, and "when a litigant has not attempted to present his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 107 S.Ct. at 1528. That relief may no longer be available to plaintiffs in the state courts would not absolve them of a failure to assert state remedies in a timely manner. *Id.* at 1529 n. 16.

pending motions were plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss. The district judge nonetheless converted defendants' motion into one for summary judgment, and proceeded to grant summary judgment in favor of the plaintiffs.[6]

The court found that the demand notices violated plaintiffs' due process rights,[7] by "demanding money ... in excess of the amounts stated on the tickets,[8] without ad-

6. We do not approve of this action by the district court, and would find it necessary to remand this case if we were not reversing on other grounds. The defendants set forth additional facts in a "prefatory note" to their motion to dismiss, bearing on the magnitude of the city's parking enforcement problems and the potential impact of an adverse decision. "[I]f 'matters outside the pleading are presented to and not excluded by the court' in connection with a motion to dismiss for failure to state a claim, the district court is required to treat the motion to dismiss as a summary judgment motion." *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988) (citing *National Family Ins. Co. v. Exchange Nat'l Bank*, 474 F.2d 237, 239 (7th Cir.), *cert. denied*, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973)). *See* Federal Rule of Civil Procedure 12(b). Assuming arguendo that the statements in defendants' "prefatory note" should have been considered "matters outside the pleading" requiring that their Rule 12(b)(6) motion be treated as a summary judgment motion, the district court erred in failing to give the parties proper notice. Rule 12(b) requires that a district court making such a conversion shall give "all parties ... reasonable opportunity to present all material made pertinent to" a Rule 56 motion. The court must therefore notify the adverse party of its intention to treat a motion to dismiss as a summary judgment motion, and allow that party a reasonable opportunity to respond. *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir.1987); *Smith v. DeBartoli*, 769 F.2d 451, 452 (7th Cir.1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1380, 89 L.Ed.2d 606 (1986). *See* 6 J. Moore, W. Taggert and J. Wicker, *Moore's Federal Practice* ¶ 56.12; 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1366; 10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 2720.

We have held that an award of summary judgment is improper where it takes the adverse party by surprise. *Choudhry v. Jenkins*, 559 F.2d 1085, 1089 (7th Cir.), *cert. denied*, 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1977); *Macklin v. Butler*, 553 F.2d 525, 530 (7th Cir.1977). See *Blassingame v. Secretary of the Navy*, 811 F.2d 65, 74 (2d Cir.1987) (court's *sua sponte* conversion of 12(b)(6) motion to summary judgment motion not permitted where losing party taken by surprise); *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir.1984) (party against whom district court contemplating *sua sponte* summary judgment "entitled to unequivocal notice"). *See also Williams v. City of St. Louis*, 783 F.2d 114, 116 (8th Cir.1986) (no *sua sponte* summary judgment in Eighth Circuit regardless of notice and opportunity for hearing). Failure to provide notice and opportunity to respond is haz-

ardous, because it tends to turn the court into a "proponent rather than an independent entity," wastes judicial resources by producing avoidable appeals and remands, and deprives the adverse party of an opportunity to present arguments against dismissal. *Sawyer*, 831 F.2d at 759; *Doe On Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411, 415 (7th Cir.1986).

To the extent that the district court may have acted on plaintiffs' pending motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a)(2), it was similarly required to give the parties "timely notice allowing them to gather and present all the evidence that would be pertinent at a trial on the merits" before granting permanent relief. *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1278 (7th Cir.1987). *See Woe by Woe v. Cuomo*, 801 F.2d 627, 629 (2d Cir.1986).

The district court not only converted the 12(b)(6) motion into a summary judgment motion, but took the parties by surprise by entering summary judgment *against* the movants-defendants. This action deprived defendants of the opportunity to present factual and legal defenses they had not yet been required to raise, including the affirmative defenses of *res judicata* and collateral estoppel. We strongly caution against such a procedure.

7. We agree with the district court that "whether ... Illinois statute[s], the Chicago Ordinances, and the Cook County Circuit Court Rules and Orders allow defendants to obtain a default judgment in an amount in excess of that stated on the ticket is purely a matter of state law involving no federal question." *Horn*, No. 85 C 6838, slip op. at 10 n. 7. This is also the case with regard to the $3 fee for court costs or statutory mailing fees that was demanded in the notices. *See supra* n. 2. Plaintiffs could have raised these issues before the traffic court had they chosen to appear. The central question in this § 1983 action is whether plaintiffs were afforded the pre-deprivation process required by the United States Constitution. There is no dispute that defendants deprived plaintiffs of constitutionally protected property under color of state law, or that plaintiffs had an opportunity for a hearing. *See Parratt v. Taylor*, 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981). This case therefore turns on whether, under the Constitution, the demand notices provided adequate notice of this opportunity.

8. The ticket-complaint and white card each clearly informed plaintiffs of their right to a hearing on the $7–$15 fines initially demanded.

equate notice of the hearing to which they were entitled." *Horn*, No. 85 C 6838, Amended Mem.Op. at 30. A listed telephone number could not substitute for notice of a hearing, the court held, and nothing in the demand notice indicated that the matter was still pending. "The demand notices strongly imply that a default judgment has been entered … by the traffic court [in the amount listed on the notice] even though the defendants had not amended the complaint nor sought a default judgment of [that] amount…." *Id.* at 26. The district court declined to refund the money paid, however, and instead ordered the city to provide an individualized hearing to any plaintiff who desired one to determine whether he or she was guilty of the infraction charged.[9] It also ordered the city to amend the complaints and notify plaintiffs of such amendments if it wished to seek a fine higher than the one shown on the ticket.

## II.

As courts have frequently emphasized, due process is a flexible concept; its protections vary according to the demands of a particular set of circumstances. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Birdsell v. Board of Fire and Police Comm'rs*, 854 F.2d 204, 207–09 (7th Cir.1988). The notice provided to plaintiffs must have been "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

*Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14 n. 15, 98 S.Ct. 1554, 1563 n. 15, 56 L.Ed.2d 30 (1978), the Supreme Court stressed the flexibility of the notice requirement. Although the court held that the public utility had violated its customers' due process rights by not adequately notifying them of the procedures that were available to contest termination of service, the Court cautioned that "[i]n a different context a person threatened with the deprivation of a protected interest need not be told 'how to complain.'" *Id.* at 14 n. 15, 98 S.Ct. at 1563 n. 15. The "final notice" at issue in *Memphis Light* "simply stated that payment was overdue and that service would be disconnected if payment was not made by a certain date." *Id.* at 13, 98 S.Ct. at 1562. In the circumstances of that case, the notice was insufficient because "[l]ay customers of electric service, the uninterrupted continuity of which is essential to health and safety, should be informed clearly of the availability of an opportunity to present their complaint." *Id.* at 14 n. 15, 98 S.Ct. at 1563 n. 15.

Plaintiffs in this case were not involuntarily deprived of an essential service. Rather, they chose to pay the amounts demanded as fines for illegal conduct. All had received the parking ticket-complaint setting one court date, and a "white card" giving notice of a second court date. The first demand notice informed them that if they did not pay the amount demanded the

---

**9.** Plaintiffs moved to modify the judgment under Federal Rule of Civil Procedure 60(b)(6), seeking refunds of 50% of the amounts paid pursuant to the demand notices instead of the relief granted by the district court—the opportunity for a hearing. Plaintiffs argued that they should be allowed to take advantage of the city's "amnesty" program, initiated after the district court's decision, allowing parking tickets to be settled for 50% of the amount of the fine specified on the ticket.

Plaintiffs contended that the court would have granted this relief had it known about the amnesty program, and that these exceptional circumstances warranted granting the Rule 60(b) motion. The court denied the motion, reasoning that had the city sent proper notices, plain-

tiffs would have either paid or appeared to contest the fine, and that in any event their cases would have been closed before the amnesty was offered. *Horn v. City of Chicago*, No. 85 C 6838, Order (N.D.Ill. May 27, 1987). Further, the court stated, some of the members of the plaintiff class would have wanted to contest their tickets even if 50% amnesty had been an option. To give these plaintiffs half of their money back but no hearing would "denigrate[ ] the seriousness of the constitutional violation which brought them into court in the first place."

We do not believe the district court abused its discretion in denying the Rule 60(b) motion, but in any event our determination that there has been no due process violation moots the issue.

city would "take further legal action," which "may include ... requesting that a DEFAULT JUDGMENT" be entered. Revised notices omitted the reference to a default judgment and added a column indicating the "maximum fine allowed" for each infraction, stating that if the recipient failed to pay the city "may take actions to recover ... a larger amount [up to] the maximum fine allowed by law." All of the notices listed "outstanding parking tickets" and a telephone and address where recipients could receive further information.

Two cases involving the same demand notices have been decided in the Circuit Court of Cook County. In *Stelzik v. City of Chicago,* 85 CH 7631 (Cook County Circuit Court Jan. 21, 1986), decided eleven months before the district court's opinion, plaintiff paid $180 in fines and penalties and $27 in court costs pursuant to the City's demand notices. Stelzik sought class certification, contending that the notices violated Illinois law. He asked for an injunction against further violations and the return of all money paid as a result of the demand notices. Judge Freeman dismissed Stelzik's complaint for failure to state a claim, holding that it constituted a collateral attack on the pending traffic ticket litigation. The court found that the listed telephone number and the language stating that the city would take "further legal action" if necessary adequately apprised recipients of the right to a hearing and "clearly indicate[d] that there [were] actions pending in the Circuit court at the time" the demand notices were received. The recipient of such a notice, the court held, was therefore required to bring any challenge in the context of the original action.

Another judge on the same court later came to the same conclusion that the demand notices were not misleading. *Daley*

*v. Datacom Systems Corp.,* 86 CH 2038 (Cook County Circuit Court Feb. 13, 1987). Judge Wosik dismissed the complaint with prejudice, holding that the "notices fully and adequately apprise the recipients of their right to seek further information in regard to the notices."

We agree with these courts that the demand notices were "reasonably certain to inform those affected," *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657, that they could contest the amounts demanded. We do not think that the notices implied that judgment had already been entered against plaintiffs, and that they therefore had no opportunity for "some kind of hearing." *Wolff v. McDonnell,* 418 U.S. 539, 577–78, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974). The language of the notices specifically referred to *future* actions the city might take, including seeking the entry of a default judgment. Any doubts could have been resolved by contacting the Department of Revenue at the number or address listed. In light of the particular circumstances of this case, including plaintiffs' repeated refusals to appear or pay,[10] we hold that the notice of an opportunity for hearing was constitutionally sufficient.[11] The judgment of the district court is therefore REVERSED and its order directing the city to provide hearings to plaintiffs is VACATED.

---

10. We note that "[t]he sense of justice is not outraged" by the city's attempts in this case "to enforce the parking regulations ... against those who flout them most audaciously." *Sutton v. City of Milwaukee,* 672 F.2d 644, 648 (7th Cir.1982).

11. *Cf. Gardner v. City of Columbus,* 841 F.2d 1272, 1279 (6th Cir.1988) (notice provided by Columbus and Datacom did not violate due process because it was reasonably calculated to apprise the parking violators of the pendency of the action).