NATIONAL PRESTO INDUSTRIES, INC., Plaintiff–Appellant,

v.

The WEST BEND COMPANY, Defendant/Cross–Appellant.

Nos. 94–1109, 94–1126.

United States Court of Appeals, Federal Circuit.

Feb. 12, 1996.

James G. Hunter, Jr., Latham & Watkins, Chicago, Illinois, argued, for plaintiff-appellant. With him on the brief were David S. Foster and Michael J. Faris.

John F. Flannery, Fitch, Even, Tabin & Flannery, Chicago, Illinois, argued, for defendant/cross-appellant. With him on the brief was Robert J. Fox.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge NEWMAN. Circuit Judge LOURIE joins the opinion, except that he only concurs in the result of Part II.

PAULINE NEWMAN, Circuit Judge.

National Presto Industries and The West Bend Company each appeals from the judgment of the United States District Court for the Western District of Wisconsin,[1] concerning Presto's United States Patent No. 5,089,-286 (the '286 patent) for a device that cuts vegetables into spiral curls.

The issues of patent validity and inducement to infringe were decided by summary judgment, and the issues of infringement, willfulness of infringement, and damages were tried to a jury. The district court enhanced the jury's damages award by one half, and denied Presto's request for attorney fees. On appeal by each side of the aspects that were decided adversely to it, we affirm the judgment in all respects.

## I

## PATENT VALIDITY

On West Bend's motion for summary judgment on the issue of validity, the district court granted judgment in favor of Presto, holding that the '286 patent was not invalid. This summary judgment in favor of the nonmoving party is challenged by West Bend, both as to the merits of the decision and with respect to the procedure.

The trial court has authority to dispose of issues summarily when the requirements of Rule 56 are met, provided that the adversely affected party has an adequate opportunity to respond and the summary procedure does not deny due and fair process. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the Court remarked that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *See Sawyer v. United States,* 831 F.2d 755, 759 (7th Cir.1987) (the movant must have opportunity to respond to the non-movant's position before summary judgment may be granted in favor of the non-movant); *Horn v. City of Chicago,* 860 F.2d 700, 703–04 n. 6 (7th Cir.1988) (a *sua sponte* summary judgment should not be granted when it takes the affected party by surprise); *Choudhry v. Jenkins,* 559 F.2d 1085, 1088–89 (7th Cir.1977).[2]

---

1. *National Presto Indus., Inc. v. The West Bend Co.,* No. 92–C–0131–C (W.D.Wis. Nov. 10, 1993) (final judgment); *National Presto Indus., Inc. v. The West Bend Co.,* 28 USPQ2d 1049, 1993 WL 151345 (W.D.Wis.1993) (summary judgment).

2. On procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit, the law of the regional circuit shall be applied. *Lummus Indus. v. D.M. & E. Corp.,* 862 F.2d 267, 8 USPQ2d 1983 (Fed.Cir.1988).

West Bend in its motion cited two Japanese publications that West Bend stated were closer prior art than the references cited by the patent examiner in granting the '286 patent. Presto in its opposition discussed the relevant prior art including the references that were cited by the examiner. The parties did not dispute the facts of the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the field of the invention. West Bend's motion brought forth extensive materials and argument by both sides on the issue of validity, and West Bend had full opportunity to respond and did respond to Presto's position that the '286 patent was not invalid.

West Bend states that it did not raise all of the grounds of invalidity that it might have raised, particularly with respect to validity based on 35 U.S.C. § 112. Presto responds that West Bend presented the affidavit of its patent expert that he had thoroughly studied the Presto patent and its prosecution history, and that during the entire summary judgment proceeding neither West Bend nor its patent expert mentioned the existence of any basis for challenging validity other than under 35 U.S.C. § 103. Moreover, in its opposition to Presto's motion *in limine* to preclude West Bend from presenting invalidity defenses at trial, West Bend made only passing mention and did not proffer any evidence in support of a § 112 invalidity defense. We have not been shown reversible error in the district court's procedure, in view of West Bend's motion, the record, and the entirety of the proceedings directed to the issue of validity.

█ West Bend points to the district court's recognition that the meaning of certain claim terms, such as the word "frame" and the phrase "configured for reception," were in dispute. West Bend argues that these disputed meanings raise questions of material fact with respect to the issue of validity, thus precluding the grant of summary judgment. However, West Bend did not show that the disputed aspects of the meanings of the challenged terms were material to the issue of validity, and we do not discern an issue of conflicting claim interpre-

tations with respect to the determinations of validity and of infringement. In deciding a motion for summary judgment of invalidity the burden of proof must be considered. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (heightened standard of clear and convincing evidence, which would be party's burden at trial, is to be considered when evaluating sufficiency of evidence on motion for summary judgment). Appellate review is on the same basis. Taking cognizance of the requirement that patent invalidity must be proved by clear and convincing evidence, we affirm the summary judgment that the '286 patent is not invalid.

## II

## INFRINGEMENT

Infringement, literal and by equivalency, was tried to the jury. The jury found by special verdicts that there was not literal infringement, but that there was infringement under the doctrine of equivalents and that the infringement was willful. The district court entered judgment on these verdicts, and both parties appeal.

Claim 1, the principal claim in suit, is as follows:

1. A vegetable cutter, comprising:

a frame having an open end and defining a retention compartment,

a container defining a retention chamber which is configured for reception within the retention compartment,

a means for rotating a vegetable retained within the retention compartment,

a blade assembly operably coupled to the container for slicing a vegetable retained within the retention compartment as the vegetable is rotated by the rotating means,

wherein the sliced vegetable passes into the retention chamber defined by the container.

The district court had denied West Bend's motion for summary judgment of noninfringement, stating that "the dispute between the experts as to an underlying fact—how a person skilled in the art would understand

the term 'configured for reception'—precludes a binding determination by this court." *National Presto,* 28 USPQ2d at 1056, 1993 WL 151345.

In *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.) (*en banc*), *cert. granted,* —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995), the court held that the meaning of a term used in a patent claim is a question of law for the court, not a question of fact for the jury, and on appeal is decided *de novo* when there is a disputed question requiring interpretation of claim terms. We have therefore undertaken to construe *de novo* the disputed claim terms. Then, based on our interpretation of the claim terms, we have reviewed the jury verdict to ascertain whether there was substantial evidence whereby a reasonable jury could have reached the verdict that was reached. *Laitram Corp. v. NEC Corp.,* 62 F.3d 1388, 1395, 36 USPQ2d 1206, 1211 (Fed.Cir.1995).

### A. *LITERAL INFRINGEMENT*

■ On cross-appeal of the jury's verdict that there was not literal infringement, Presto asks us to find literal infringement as a matter of law, based on our interpretation of the disputed claim terms. Presto states that when the claim is correctly construed, it reads on the West Bend device. West Bend responds that its food slicer does not have a "frame," a "retention compartment," and a container "configured for reception," if these terms are given West Bend's proposed meaning.

The district court had stated, in denying summary judgment on the issue of infringement, that these questions can not be decided solely on review of the patent specification and the prosecution history. In *Markman* the court held that issues of claim interpretation are matters of law, and that expert testimony is limited to aiding the court in understanding the technology. However, we have been greatly aided in understanding these terms in the context in which they are used by consideration of the testimony of the expert witnesses and the resolution by the trier of fact of conflicts in the evidence. For example, West Bend's expert witness testified that, as used in the '286 patent and as understood in light of the West Bend device, the prosecution history, and the prior art, the "frame" in the '286 patent is the outer container that supports both the inner container and the vegetable being cut, and that in the West Bend device the inner container provides the support. In contrast, Presto's expert witness testified that in the West Bend device the outer container is the "frame" and supports the inner container, and that this construction is within the scope of the Presto claim.

There was also conflicting testimony concerning the meaning of a "container ... configured for reception": West Bend's witness testified that the West Bend "frame" is not a container capable of "retention," and Presto's witness testified to the contrary interpretation, both sides explaining their reasoning. There was also conflicting testimony concerning whether the "open end" of claim 1 is correctly interpreted to include the West Bend device. West Bend pointed out that Presto amended "open top" to "open end" during patent prosecution after Presto saw the West Bend commercial device, and argued that any enlargement of scope resulting from that amendment is not supported by the specification. Presto disputed this interpretation of "open end," and argued that the claim term "open end" is supported in that the specification does not require that the claims be limited to an open top.

The district court, on post-trial motions, concluded that Presto's position is correct as to the interpretation of "frame," the "retention compartment," and "open end," and that West Bend's position is correct as to the "container ... configured for reception." We agree that these rulings are the correct claim interpretation. On this claim interpretation, a reasonable jury could have found that the claims were not literally infringed. The judgment on this issue, entered on the jury verdict, is affirmed.

### B. *INFRINGEMENT BY EQUIVALENCY*

The jury found that claims 1, 3, 4, 5, 6, 8, and 11 were infringed in terms of the doctrine of equivalents. On appeal West Bend raises four principal arguments:

### 1. The Equitable Threshold

West Bend states that the issue of equivalency should not have been given to the jury because it is equitable in nature, and therefore that the jury verdict is at best advisory. This position was rejected by the district court, who correctly applied precedent and charged the jury to decide the issue. In *Hilton Davis Chemical Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 35 USPQ2d 1641 (Fed.Cir.1995) (*en banc*) the court reaffirmed that determination of infringement by equivalency is a question of fact, and is found by the jury when trial is to a jury. Since that procedure was followed, this argument needs no further discussion.

### 2. The Evidence Needed to Prove Equivalency

West Bend argues that Presto did not provide sufficiently explicit witness testimony and "linking attorney argument" on each of four factual questions of function, way, result, and "why," citing *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 10 USPQ2d 1767 (Fed.Cir.1989) and the concurring opinion in *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 21 USPQ2d 1161 (Fed.Cir. 1991) as requiring this formulaic exposition by witnesses and lawyers.

In *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1950) the Court explained that the criterion of equivalency is substantial sameness of the patented invention and the accused composition, and that while substantial identity of function, way, and result may be probative of equivalency, evidence to show equivalency "is not the prisoner of a formula." *Graver Tank*, 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 330. In *Hilton Davis* the court reaffirmed that proof of equivalency is not a matter of formula, but of evidence appropriate to the case. The court's *en banc* decision in *Hilton Davis* made clear that no specific formulation of evidence and argument is required. Thus this argument is without substance, and indeed neither *Lear–Siegler* nor *Malta* requires any particular formulation.

West Bend also criticizes Presto's proof of equivalency as inadequate because it was not directed to the "overall" function, way, and result of the device, but only to the specific claim elements that were in dispute. The district court's instruction to the jury to compare each element in the claims with the corresponding component of the accused device was in accordance with *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir.1987) (*en banc*), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). No error was assigned to this instruction at the time of trial. In the absence of timely objection, Fed.R.Civ.P. 51,[3] and indeed in the absence of error in the instruction, this argument too is devoid of substance.

West Bend points to the differences of its device from that patented by Presto, and Presto points to the similarities. Before the jury there was extensive evidence and argument on how the patented and the accused devices were constructed and operated, overall as well as with respect to each claim element. This evidence required evaluation and weighing by the trier of fact, in determining the question of equivalency. That is the procedure that was here followed.

### 3. West Bend's Patent

West Bend argues that its vegetable slicing device can not be equivalent to Presto's patented invention, as a matter of law, because West Bend obtained its own patent on its device. West Bend stresses that the patent examiner cited Presto's '286 patent as prior art, when granting a patent to West Bend.

The grant of a separate patent on the accused device does not automatically avoid infringement, either literal or by equivalency. Improvements or modifications may indeed be separately patentable if the requirements of patentability are met, yet the device may or may not avoid infringement of

---

3. **Rule 51. Instructions to Jury: Objection**
 ... No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

the prior patent. *See, e.g., Atlas Powder Co. v. E.I. DuPont de Nemours & Co.,* 750 F.2d 1569, 1580–81, 224 USPQ 409, 417 (Fed.Cir. 1984) (improvement in a step of a patented process, although separately patentable, did not avoid infringement under the doctrine of equivalents). Whether a modified device is within the scope of the prior patent, literally or by equivalency, depends on the particular facts. The fact of separate patentability is relevant, and is entitled to due weight. However, West Bend's statement that there can not be infringement as a matter of law is incorrect.

Presto states that only the first page of the West Bend patent was of record at trial, and that West Bend presented no evidence concerning the subject matter of its patent. Such evidence when present warrants consideration by the trier of fact, along with the other evidence of the differences and similarities of the patented and accused devices. However, evidence not presented at trial is not before us on appeal. Thus this aspect provides no basis for challenging the jury verdict.

### 4. *The Hypothetical Claim Procedure*

West Bend imputes error to the procedure of the trial court on the ground that the hypothetical claim analysis of *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.,* 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir. 1990) was not conducted. West Bend states that it was the duty of the trial judge to identify as a matter of law the available range of hypothetical equivalents to the Presto claims, to determine whether that range would have been patentable to Presto, and so to instruct the jury.

■ The trial court need not create a hypothetical claim and determine its hypothetical patentability before the jury can find the facts of equivalency *vel non.* When the patentee has made a *prima facie* case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer, not the trial judge. West Bend did not offer such evidence. Indeed, West Bend does not reconcile the asserted unpatentability of a

hypothetical claim that covers its device with its argument that its device is itself patented. We discern no error in the absence of a "hypothetical claim" analysis.

■ The trial judge has the duty of assuring the relevance of the proposed evidence to the issue requiring decision. *See generally Daubert v. Merell–Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (relevance and admissibility are the responsibility of the trial judge). The factual issues of equivalency, including the factual issues of prior art devices and the factual issues of function, way, and result, were appropriately tried with respect to the actual claim, not a hypothetical claim.

### *Conclusion*

■ On appellate review, the evidence at trial must be viewed in the light most favorable to the party that secured the jury verdict. *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.,* 872 F.2d 978, 988, 10 USPQ2d 1338, 1344 (Fed.Cir.1989). Our appellate role ends when there is shown to be substantial evidence, on the record as a whole, as could have been accepted by a reasonable jury as probative of the issue. *Id.* We conclude that there was substantial evidence to support the jury verdict of infringement in terms of the doctrine of equivalents. The judgment entered on that verdict is affirmed.

### III

### WILLFUL INFRINGEMENT

### 1. *Law v. Equity*

■ Two principal arguments are raised on West Bend's appeal of the jury's finding of willful infringement. First, West Bend states that the question of willful infringement is "equitable" and should not have been given to the jury, and therefore requires our *de novo* review or remand to the district court for determination.

Liability for willfulness of infringement turns on considerations of intent, state of mind, and culpability. We need not belabor that these are questions of fact. Precedent

illustrates various objective standards whereby the culpable severity of patent infringement has been measured: for example, whether the infringer exercised care to respect the legal rights of the patentee, whether sound legal advice was timely obtained, whether the actions taken were reasonable, whether there was copying or independent development by the infringer, and various aspects of the actual relationship between the patentee and the infringer.

 Whether the infringer had a reasonable belief that the accused activity did not violate the law is a question of fact, *see Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 n. 8, 11 USPQ2d 1321, 1327 n. 8 (Fed.Cir.1989), as are other questions relevant to the issue of willfulness. Although fairness as between patentee and infringer is a consideration in the determination of whether illegal behavior warrants an enhanced penalty, the question does not thereby become "equitable." The issue of willful infringement remains with the trier of fact.

### 2. The Time of Filing Suit

 As its second argument, West Bend states that since Presto filed suit on the day the patent issued, as a matter of law the infringement can not have been willful, because West Bend had no grace period after patent issuance in which it might have suspended its infringing activities. West Bend seeks authority in *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236, 224 USPQ 418, 425 (Fed.Cir.1985), wherein the court stated that "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it." However, West Bend knew exactly when Presto's patent came into existence, and indeed had several months' advance notice, whereas in *State Industries* the infringer had no knowledge of the patent beyond the footnote "Patent Applied For" in the patentee's literature.

The district court, discussing on post-trial motion the evidence of willful infringement, observed that West Bend did not obtain a written opinion of counsel until eleven months after Presto's suit was filed. The court referred to West Bend's evidence relating to its assessment of the patentability of the Presto device before Presto's patent was issued, observed that the jury could have disbelieved certain of this testimony, and mentioned the evidence of West Bend's copying of Presto's design. The court also referred to West Bend's continuation of infringing sales after suit was filed. All of the circumstances must be considered in determination of the issue of willful infringement. *See Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944, 22 USPQ2d 1119, 1125 (Fed.Cir.1992) ("evaluating the totality of the surrounding circumstances").

There was substantial evidence whereby a reasonable jury could have found that West Bend's infringement was willful. The judgment entered on that verdict is affirmed.

### 3. Enhancement of Damages

The district court denied Presto's request for damages based on West Bend's inducement to infringe, as discussed *post*, and the damages award was based only on West Bend's sales of inventory after patent issuance. The damages on this basis is not appealed by West Bend. However, the court is authorized by statute to multiply damages up to threefold. 35 U.S.C. § 284. The district court increased the damages by one half. West Bend appeals this enhancement.

 The enhancement of damages is a discretionary ruling of the court. It is reviewed with the requisite deference to the discretion of the trial judge, *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 n. 8, 11 USPQ2d 1321, 1327 n. 8 (Fed.Cir.1989), and is not disturbed absent abuse of that discretion. *American Medical Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1532, 28 USPQ2d 1321, 1326 (Fed.Cir.1993); *Great Northern Corp. v. Davis Core & Pad Co.*, 782 F.2d 159, 167, 228 USPQ 356, 360 (Fed.Cir.1986). Thus a determination with respect to enhanced damages will stand unless it was based on a clear error of fact, an error of law, or a manifest error of judgment.

 The wide range of enhancement that is provided by statute, up to threefold, permits the trial court to reflect the interest of justice in adjusting the damages appropriate to the culpability of the acts of infringe-

ment. West Bend points out that this court has affirmed a refusal to enhance damages on close questions, citing *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1581, 24 USPQ2d 1401, 1420 (Fed.Cir. 1992). Indeed, this court in *Brooktree* appropriately deferred to the judgment of the trier of fact. However, the closeness of the question is only one factor that may affect the decision whether to enhance the damages award. *Brooktree* simply illustrates deferential review on appeal.

The district court, explaining its decision to increase damages by one half, discussed the various considerations raised by both Presto and West Bend. We have not been shown reversible error in this decision, and affirm the court's holding.

## IV

### INDUCEMENT TO INFRINGE

■ On cross-appeal Presto argues that West Bend, with knowledge of Presto's commercial device and Presto's patent activities, acted to flood the market with West Bend's "imitation" during the months before the Presto patent issued. Presto states that West Bend, by these actions, actively induced infringement of the Presto patent after patent issuance, in violation of 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").

The district court held that as a matter of law there could not be liability for pre-issuance activity leading to post-issuance infringement, and refused to give the question to the jury. Presto contends that this holding is incorrect, and requests remand for trial of the factual issue of inducement.

### A

Since the question was decided summarily, as a matter of law, the factual premises as set forth by Presto must be assumed, and disputed facts resolved in favor of Presto for the purpose of determining whether the judgment was correct and the issue properly withheld from the jury. The context is as follows:

Presto commercially introduced its vegetable cutter in April 1991. In June 1991, upon hearing trade rumors that West Bend was developing a similar product, Presto's chairman told West Bend's president that Presto had applied for a patent. West Bend accelerated its activity and increased its production, and the West Bend vegetable cutter was first sold in September 1991. In November 1991, West Bend's president agreed to receive and was sent a copy of Presto's allowed claims. The Presto patent issued on February 18, 1992, and suit was filed that day.

Presto's position is that its damages from West Bend should include recompense for infringing retail sales and use, after patent issuance, of devices that were placed into commerce by West Bend during a reasonable period before Presto's patent issued. Presto cites several cases that have imposed liability for inducement to infringe when articles were placed in commerce with the knowledge and intent that they would be resold or used to infringe the patent, and when compensation for post-issuance infringement would not be readily available from the direct infringers. Presto argues that the criterion for liability under § 271(b) is whether infringement by West Bend's customers was directly, foreseeably, and intentionally caused by West Bend's activities, and that it is not controlling whether these activities occurred before or after Presto's patent was issued. Presto states that the district court erred in holding that there can never be liability for pre-issuance inducement, even in circumstances when the inducer had knowledge that the patent was about to issue and would be directly infringed by resale and use, and when the inducer acted with the intent that this direct infringement would occur.

### B

■ The statutory liability for inducement of infringement derives from the common law, wherein acts that the actor knows will lead to the commission of a wrong by another, place shared liability for the wrong on the actor. *See Sims v. Western Steel Co.,* 551 F.2d 811, 817 (10th Cir.1977) (comparing inducer of infringement to an accessory before the fact). Although the Federal Circuit

has not directly addressed pre-issuance inducement, we have recognized that 35 U.S.C. § 271(b) provides a remedy against "actively and knowingly aiding and abetting another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668, 7 USPQ2d 1097, 1103 (Fed.Cir.1988). The question now presented is whether remedy under § 271(b) is available, subject to proof, against persons who deliberately place later-infringing items into the chain of commerce before the patent issues.

The district court held that West Bend can not be liable for its customers' infringement based on West Bend's pre-issuance activities, even if Presto's allegations of bad faith were proven. Precedent is sparse, but several district courts have held that liability for inducement may lie for pre-issuance actions when there is knowledge of the forthcoming patent, and intent that it will be infringed. In *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F.Supp. 1485, 1490, 225 USPQ 929, 932 (D.Del.1985) the court held that "if the Plaintiff could prove that Defendants knew that a patent would issue and that its claims would cover Defendants' products, then there is no reason why a defendant could or should escape liability for inducement of infringement." The court in *Procter & Gamble* referred to the policy of the patent laws and the opportunity for subversion of that policy, and explained that its interpretation of § 271(b) does not enlarge the scope of patent protection, but simply provides a remedy for otherwise unremediable acts of actual infringement that occur during the term of the patent. A few district courts have endorsed this reasoning. In *Mixing Equipment Co. v. Innova–Tech, Inc.*, 2 USPQ2d 1212, 1986 WL 14541 (E.D.Pa.1986), the court stated that:

> [The *Procter & Gamble* ] interpretation ensures that intentional, tactical violations of an inventor's patent will not go uncompensated as a result of a sterile reading of the patent laws. Under [the court's] approach, the party most responsible for the infringement is held culpable for the inventor's loss, thus alleviating the unfair burden on the inventor who would otherwise be forced to scour the market in search of direct infringers.

2 USPQ2d at 1214, 1986 WL 14541. Similarly in *Upjohn Co. v. Syntro Corp.*, 14 USPQ2d 1469, 1990 WL 79232 (D.Del.1990) there were pre-issuance sales in circumstances reminiscent of those of the case at bar. Syntro knew of the pendency of Upjohn's patent, and Upjohn had provided Syntro with a copy of the pending claims. The court held that a party acting knowingly and with intent to cause infringement of the patent after its issuance could be liable for inducement. *See also Jones v. Radio Corp. of Am.*, 131 F.Supp. 82, 84, 106 USPQ 170, 171 (S.D.N.Y. 1955) ("even though Union Carbide's acts were all performed prior to issuance of the patent, if they were performed with intent to infringe the patent when issued or with intent that the infringing conduct continue after the patent was issued, they constitute infringement"); *Weyerhaeuser Timber Co. v. Bostitch, Inc.*, 178 F.Supp. 757, 760, 123 USPQ 493, 495 (D.R.I.1959) ("even though the grant of said license and the delivery of said designs and patterns occurred before the date of the reissue patent, such acts would constitute infringing conduct if they were performed with intent to infringe the forthcoming reissue patent or with intent that said infringing conduct would continue after the reissue patent was granted").

Thus Presto states that the district court erred, and that Presto should have been permitted to show that West Bend had knowledge of Presto's patent application and the allowed claims, and acted in violation of law to flood the market with the intent that its retailers and their customers would directly infringe the patent. As evidence of West Bend's knowledge and culpable intent Presto points, *inter alia*, to the "hold harmless" undertakings between West Bend and some of its retailers with respect to future liability for infringement. Presto states that at least after West Bend had actual knowledge of Presto's allowed claims, West Bend did not act prudently and in good faith to avoid infringement. Presto states that West Bend fully expected that its shipments to retailers in the weeks before patent issuance would be resold in part after patent issuance, and that the devices were intended to be used after patent issuance.

Presto states that it has an inadequate remedy for the infringing retail sales and uses after patent issuance. "As a practical matter, [the patentee] cannot bring an action against thousands of retailers." *Procter & Gamble*, 604 F.Supp. at 1489, 225 USPQ at 932. Presto argues that § 271(b) is not by its terms limited by when the inducement occurred, but only by whether direct infringement ensued. Thus Presto argues that the law does not bar recovery for acts of inducement committed before patent issuance, when the actor not only had the knowledge that a patent application is pending, but also had the intent that as a direct result of its actions there would be direct infringement by others after patent issuance. In *Manville Sales Corp. v. Paramount Systems*, 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed.Cir. 1990) the Federal Circuit explained that "The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." However, in *Manville* there was no issue of pre-issuance activity.

West Bend, in turn, argues that § 271(b) was not intended to reach pre-issuance activities. West Bend points out that there can be no liability for infringement of a pending patent application, and that the law of inducement is similarly limited. West Bend argues that much can happen to prevent or delay the patent grant, and that there are many opportunities for abuse by patentees. West Bend points out that the "warning" of impending patent issuance, whether by a "patent pending" marking or by direct information from the patentee, imposes no liability but is simply a cautionary notice of a possible future event. West Bend criticizes the recent district court decisions contrary to its position, and points out the general rule that without a patent there can not be infringement.

## C

■ The question is not whether, on the facts of this case, West Bend's action led to infringement by others, at least as a disputed material fact requiring trial. The threshold question is whether the absolute rule of law adopted by the district court is correct. There are cogent arguments of fact, law, and policy on both sides of the issue, as have been thoroughly presented by the parties. We conclude that the district court was correct, and that as a matter of law § 271(b) does not reach actions taken before issuance of the adverse patent.

Although the tort of inducement is itself prospective, in that the direct infringement will not have occurred until after the acts of inducement, when no patent has issued at the time of the inducement there can not be a violation of § 271(b). The principle of liability for "aiding and abetting" the wrongful acts of others is not imposed retrospectively, to make illegal an act that was not illegal when it was done. That is, if the thing that was abetted was not illegal at the time of abetment, but depended on some future event that might not occur (such as issuance of the patent) liability can not be retroactively imposed. As discussed in *Camp v. Dema*, 948 F.2d 455 (8th Cir.1991) with respect to violation of the securities laws, "aiding and abetting not only requires assistance, but also knowledge of a wrongful purpose." The purpose must be wrongful at the time of the action with which the abettor is charged.

We take note of the thoughtful district court decisions to the contrary, with reference to particularly egregious actions by the party charged. In *Procter & Gamble v. Nabisco Brands, Inc.*, 3 USPQ2d 1207, 125 F.R.D. 405 (D.Del.1985) the court referred to misappropriation of confidential information and illicit delay of patent issuance by the accused inducer, and other misconduct of the nature of fraud and unfair competition. We do not hold that such improper actions are insulated from remedy. However, we hold that the general rule is that inducement of infringement under § 271(b) does not lie when the acts of inducement occurred before there existed a patent to be infringed.

The summary judgment of the district court, holding as a matter of law that West Bend was not liable for inducement of infringement based on the products made and sold by West Bend before patent issuance, is affirmed.

## V

## ATTORNEY FEES

The district court denied Presto's request for attorney fees under 35 U.S.C. § 285. Presto argues that when willfulness of infringement is found the award of attorney fees should routinely follow, absent sound reason to deny the award. Indeed, such award often follows a finding of willful infringement, for such finding reflects sufficient aggravation of the wrong as to meet the "extraordinary case" criterion of § 285. However, the award of attorney fees is not automatic, even for the extraordinary case. *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,* 781 F.2d 198, 228 USPQ 367 (Fed.Cir. 1986).

The trial judge's discretion in the award of attorney fees permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice. This discretion will not be disturbed absent abuse of that discretion.

Presto states, and we agree, that a party should not have to bear the expense of outcome-certain litigation. However, we do not view this case as outcome-certain, and take note of the district court's reference to the closeness of the question of infringement. We do not discern a clear abuse of judicial discretion in the denial of attorney fees. That decision is affirmed.

## VI

## THE RULE 408 ISSUE

The district court excluded evidence of the several communications between Presto and West Bend before patent issuance, the court describing them as settlement negotiations and thus subject to Fed.R.Evid. 408. Presto argues that these communications were not made in connection with a disputed claim and its negotiation and possible settlement, and thus were not settlement negotiations and should not have been withheld from the jury. Presto cites *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1372–73, 195 USPQ 417, 423 (10th Cir.1977), where pre-litigation discussions were viewed as "business communications" and not settlement negotiations, and were admissible in evidence. In *Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 218 USPQ 481 (Fed.Cir.1983), this court explained that exclusion of evidence under Rule 408 is limited to "actual disputes over existing claims," and held that an offer to license a patent when there was no charge of infringement was not an offer to settle a claim in dispute, and was admissible into evidence.

Presto alternatively argues that the communications between Presto and West Bend were proffered in evidence not to prove liability, but to show the culpable state of mind of West Bend's officers. Presto argues that this evidence was relevant to both willfulness of infringement and inducement to infringe, and that Rule 408 "does not require exclusion when the evidence is offered for another purpose."

We review the district court's evidentiary rulings with extreme deference. As discussed by Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 Syracuse L.Rev. 635, 637 (1971), in matters of trial management the district court has a limited right to be wrong without incurring appellate intrusion. Appellate review of evidentiary rulings is extremely restricted; it must be shown that there was manifest error, such as a reasonable likelihood that the improper exclusion of evidence prejudiced the outcome. *See Abbott Labs. v. Brennan,* 952 F.2d 1346, 1351, 21 USPQ2d 1192 (Fed.Cir.1991) (inappropriateness of appellate intrusion into trial management); *Ellis v. City of Chicago,* 667 F.2d 606, 611 (7th Cir.1981) ("decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court and will not be reversed on appeal unless they constitute a clear abuse of discretion"). No such showing has here been made.

### Costs

No costs.

*AFFIRMED.*